IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CATHERINE JENKINS
and MARK JENKINS,

          Plaintiffs,

v.                          CIVIL ACTION NO.   2:23-cv-00776

WEST VIRGINIA CVS
PHARMACY, L.L.C.,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *West Virginia CVS Pharmacy, LLC's Motion for Summary Judgment* (Document 26), *West Virginia CVS Pharmacy, LLC's Memorandum of Law in Support of Motion for Summary Judgment* (Document 27), and the *Plaintiffs' Response to Defendant West Virginia CVS Pharmacy, LLC's Motion for Summary Judgment* (Document 30), as well as all exhibits. For the reasons stated herein, the Court finds that the motion should be denied.

**FACTUAL ALLEGATIONS**

On November 10, 2021, Catherine Jenkins went to a CVS Pharmacy in Parkersburg, West Virginia, operated by the Defendant. She parked in the first parking spot on the left, facing the store. Directly in front of Ms. Jenkins' car was a sidewalk curb, and to the left of her car was a planter area. The planter area was surrounded by a concrete curb approximately five inches high. Between the asphalt of the parking space and the planter area curb, there was a concrete border surrounding the planter area. The parties refer to this border as a "gutter." The gutter is

approximately eighteen inches in width. There is a height difference between the gutter and the asphalt that is inconsistent down the length of the parking space. The difference is 3/4 inch at the sidewalk curb, one inch at two feet away from the curb, and 5/8 inch at six feet away from the curb. Some of the area of the parking space is covered with a slightly raised asphalt repair patch, with one such patch located at the top left corner of the space.

After parking in the space, Ms. Jenkins walked into the store without problem. She did not notice any unevenness. After making her purchases, she walked on the sidewalk towards her car. Ms. Jenkins stated in her deposition that she stepped off the curb, walked towards her car door, and fell as she was walking along the gutter. As she walked to her car, she was looking at her car door handle rather than where she was stepping. Ms. Jenkins was unsure of what caused her fall. She said she lost her balance after her right foot[1] felt unlevel approximately three steps from the curb. There are no witnesses or video surveillance of Ms. Jenkins' fall.

After she fell, she called her husband, Mark Jenkins, who called 911. An ambulance arrived and transported Ms. Jenkins to Camden Clark Medical Center in Parkersburg, West Virginia. The ambulance report stated that Ms. Jenkins "had fallen over or stepped off the curb and she went down not knowing what [happened]." (Document 26-5 at 3.) At the hospital, she was diagnosed with bilateral ankle fractures and a right elbow fracture.

Both parties have obtained experts. The Plaintiffs submitted an expert report by architect Ralph Pedersen. In his report, Mr. Pedersen noted four potential hazards where Ms. Jenkins parked: (1) the stepdown from the sidewalk to the asphalt was "somewhat irregular" and varied from six to seven inches in height; (2) the limited space available to walk between a parked car

---

1 Ms. Jenkins first testified in her deposition that she could not remember which foot first felt unlevel, her right or left, but later concluded it was her right foot.

and the planter area curb; (3) the irregular height between the gutter and the asphalt along the length of the parking space; and (4) the slightly elevated asphalt patch in the upper left corner of the parking spot. (Document 30-1 at 3–4). He opined that any of these hazards *may* have contributed to her fall. Mr. Pederson cited OSHA and ADA guidelines pertaining to changes in floor levels and also concluded that the parking lot complied with the International Property Maintenance Code (IPMC).

The Defendant's expert, Paul W. Dorothy, Ph.D., is a civil engineer. Mr. Dorothy concluded that the location of Ms. Jenkins' fall met the standard of care, as well as all applicable codes and guidelines. He opined that the industry standard of care does not require an entity to prevent *all* falls from occurring on walkway surfaces. He stated in his report that the potential for a fall exists "whenever forward momentum and gravity are involved." (Document 26-7 at 15.) Even if a walkway is maintained, eliminating the risk of a pedestrian falling is "impossible." (*Id.* at 16.) Mr. Dorothy also noted that conforming with safety codes does not alleviate a person's responsibility to act with due caution regarding their own safety. He lastly asserted that Mr. Pedersen's report failed to identify a causal relationship between the four claimed hazards and Ms. Jenkins' fall, resulting in Mr. Pedersen's opinions being unfounded.

Other evidence includes a deposition with Kyle Piggott, the Defendant's designated representative. He stated that customers would occasionally complain about the curb located directly in front of the store doors. Because the parking lot is graded away from the building, that portion of the curb is slightly taller than the rest.

The Plaintiffs filed suit on November 8, 2023, in the Circuit Court of Wood County, West Virginia. The action was removed to this Court on December 6, 2023. The Plaintiffs assert

claims of negligence and loss of consortium and seek damages, attorney's fees, and costs.  The Defendant moves for summary judgment on all claims.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).  A "material fact" is a fact that could affect the outcome of the case.  *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).  A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.  *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23.  When determining whether summary judgment is appropriate, a court must view all the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party.  *Hoschar*, 739 F.3d at 169.  However, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor."  *Anderson*, 477 U.S. at 256.  "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon

another' to resist dismissal of the action." *Perry v. Kappos*, No. 11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Notably, "a plaintiff cannot rely on an unverified complaint" because an "unsworn argument does not constitute evidence" for summary judgment purposes. *Askins v. Belissary*, No. 4:12-cv-1856-RBH, 2014 WL 507279, at *7 (D.S.C. Feb. 6, 2014), *aff'd*, 564 F. App'x 46 (4th Cir. 2014); *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004) (unpublished decision).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

In its motion, the Defendant argues that summary judgment is appropriate because it did not breach any duty owed to Ms. Jenkins, her injuries were not caused by any breach, and Mr. Jenkins's loss of consortium claim fails due to the insufficiency of Ms. Jenkins' claim. The Defendant states that it owed only a duty of reasonable care to maintain its premises in safe

condition and that business owners are not legally responsible for every fall on their property. Instead, it argues business owners are liable only if a hidden condition precipitated the fall. The Defendant further argues that it cannot be held liable for Ms. Jenkins' fall because the height difference between the concrete gutter and the parking spot was open and obvious. Additionally, it contends that the causation element is absent because Ms. Jenkins was not sure what caused her fall, she did not attribute her fall to anything on the premises, and Mr. Pedersen could not identify a causal relationship between the premises and the fall. Therefore, the Defendant states that Ms. Jenkins has not presented sufficient evidence to create a genuine dispute of material fact as to her negligence claim and that it is entitled to judgment as a matter of law. Consequently, it argues Mr. Jenkins' loss of consortium claim fails because it is contingent on his wife's negligence claim.

In response, the Plaintiffs argue they have presented sufficient facts to establish a prima facie negligence claim. They contend that a genuine dispute of material fact exists regarding whether a breach occurred, citing evidence from the Plaintiffs' expert and Mr. Piggott's deposition. Specifically, they argue the hazards identified by Mr. Pedersen show that a reasonable person using the Defendant's premises is at risk, and that these hazards should have been known to the Defendant. Mr. Piggott's testimony regarding customer complaints about the store's curbs demonstrates that the Defendant knew or should have known about the height difference between the gutter and the parking spot. The Plaintiffs argue a reasonable jury could, therefore, find the Defendant breached the duty of care it owed to Ms. Jenkins. Regarding causation, the Plaintiffs contend there is a genuine dispute of material fact, given that Ms. Jenkins's deposition testimony and responses to interrogatories could lead a factfinder to conclude that the uneven height between the gutter and the parking spot was the proximate cause of her fall. They further argue that

whether the danger was obvious is a question of fact for jury determination. Finally, the Plaintiffs assert that Mr. Jenkins' loss of consortium claim is viable because there is a genuine dispute of material fact concerning Ms. Jenkins' negligence claim.

The basic elements of a negligence claim are duty, breach of that duty, causation, and damages. "In order to establish a negligence claim in West Virginia, '[a] plaintiff must prove by a preponderance of the evidence that the defendant owed a legal duty to the plaintiff and that by breaching that duty the defendant proximately caused the injuries of the plaintiff.'" *Cline v. 7-Eleven, Inc.*, No. 3:11-cv-102, 2012 WL 5471761 (N.D. W. Va. Nov. 9, 2012) (citing *Neely v. Belk, Inc.,* 668 S.E.2d 189, 197 (W. Va. 2008)). The West Virginia Supreme Court has established the following factors for premises liability cases:

> In determining whether a defendant in a premises liability case met his or her burden of reasonable care under the circumstances to all non-trespassing entrants, the trier of fact must consider (1) the foreseeability that an injury might occur; (2) the severity of injury; (3) the time, manner and circumstances under which the injured party entered the premises; (4) the normal or expected use made of the premises; and (5) the magnitude of the burden placed upon the defendant to guard against injury.

Syl. pt. 4, *Hersh v. E-T Enterprises, Limited Partnerships*, 752 S.E.2d at 338 (citing Syl. pt. 6, *Mallet v. Pickens*, 522 S.E.2d 436 (W. Va. 1999).

Foreseeability is a dispositive element in premises liability cases because "before an owner or occupier may be held liable for negligence, he must have had actual or constructive knowledge of the defective condition which caused the injury." *Neely*, 668 S.E.2d at 199 (quoting *Hawkins v. United States Sports Assoc., Inc.*, 633 S.E.2d 31, 35 (2006)) (internal quotation marks omitted). Moreover, premises liability is limited to the extent that the dangers are "open, obvious, reasonably

7

apparent or as well known to the person injured as they are to the owner or occupant." W. Va. Code § 55-7-28(a). Specifically, this West Virginia statute provides:

> A possessor of real property, including an owner, lessee or other lawful occupant, owes no duty of care to protect others against dangers that are open, obvious, reasonably apparent or as well known to the person injured as they are to the owner or occupant, and shall not be held liable for civil damages for any injuries sustained as a result of such dangers.

*Id*. The Legislature expressed its intent that the statute "reinstates and codifies the open and obvious hazard doctrine . . . to its status prior to the decision of the West Virginia Supreme Court of Appeals in the matter of *Hersh v. E-T Enterprises, Limited Partnerships*, 752 S.E.2d 336 (W. Va. 2013)." Thus, West Virginia case law applying the open and obvious doctrine prior to 2013 remains useful in evaluating claims. *See*, *W. Liberty Univ. Bd. of Governors v. Lane*, No. 16-0942, 2018 WL 300564, at *4 (W. Va. Jan. 5, 2018) (unpublished) (citing pre-2013 precedent in considering the statutory open and obvious doctrine).

In West Virginia, "[t]he owner or the occupant of premises owes to an invited person the duty to exercise ordinary care to keep and maintain the premises in a reasonably safe condition." Syl. Pt. 2, *Burdette v. Burdette*, 127 S.E.2d 249, 250 (W. Va. 1962). However, the open and obvious doctrine proscribes liability "for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant." *Id*. at 552 (quoting 38 Am. Jur., Negligence, Section 97); *See also Butner v. Highlawn Mem'l Park Co.*, 881 S.E.2d 390, 397 (W. Va. 2022) (noting this statutory language "comes into play in cases where there is evidence that the owner or occupant knew of the dangers.").

The *Burdette* court also stated that: "[t]he duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and

the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care." *Burdette*, 127 S.E.2d at 552 (quoting 65 C.J.S. Negligence § 50); *see also McDonald v. Univ. of W. Va. Bd. of Trustees*, 444 S.E.2d 57, 61 (W. Va. 1994) ("The duty to keep premises safe does not apply to defects or conditions which should be known to the invitee or which would be observed by him in the exercise of ordinary care."). However, the West Virginia Supreme Court has held that "[t]he open and obvious statute does not abrogate" the "duty to exercise ordinary care and keep and maintain the premises in a reasonably safe condition." *W. Liberty Univ. Bd. of Governors*, 2018 WL 300564, at *4.

    1. *Breach of Duty*

In a slip and fall case, a plaintiff must establish that she was injured by a dangerous or defective condition on the defendant's premises that was not open and obvious, and of which the defendant had actual or constructive knowledge. *McDonald*, 444 S.E.2d at 60 (citations omitted). Whether the height difference between the gutter and parking spot was open and obvious is a question for the jury, not the Court, to decide. *See Bradley v. Sugarwood, Inc.,* 260 S.E.2d 839, 840 (1979) (explaining that questions of negligence are for the jury, even when there is no factual dispute, if different conclusions could be drawn from the facts). As set forth in *Hersh,* the jury, as factfinder, will be responsible for assessing the factors related to the burden of reasonable care. 752 S.E.2d at 349.

The Court finds that there is a genuine dispute of material fact as to whether the height difference between the gutter and the parking spot was open and obvious, which precludes summary judgment. While it is true that each person has a duty to exercise ordinary care to avoid hazards and to look effectively for such hazards, a jury could find that a small height difference

9

may not be easily perceived if there is nothing to alert a pedestrian to the potential danger. *Birdsell v. Monongahela Power Co.,* 382 S.E.2d 60, 62 (W. Va. 1989) (describing a person's duty to be reasonably aware to avoid injury). Ms. Jenkins testified that she did not see the height difference between the gutter and the asphalt. The photographs submitted by the parties do not conclusively establish that this height difference was open and obvious such that a jury could not reasonably find otherwise.

Furthermore, *Senkus v. Moore*, relied on by the Defendant, is distinguishable from the present case. In *Senkus*, the Supreme Court of Appeals of West Virginia found that a veterinary hospital did not breach its duty of care by placing an animal scale on the floor near an examination room. 535 S.E.2d 724, 727 (W. Va. 2002). A patron that tripped on the scale when exiting the room, after walking past it to enter the room, could not recover damages because she was aware of the scale's presence. *Id*. The court found the patron was negligent for failing to watch where she was walking on her way out of the exam room. *Id*.

Here, although Ms. Jenkins walked over the gutter on her way into the store and perhaps did not watch where she was walking on the way out of the store, she testified that she was unaware the area was uneven (Document 26-4 at 79), unlike the plaintiff in *Senkus*, who was aware of the scale's potential as a tripping hazard. Ms. Jenkins' case is further distinguished from *Senkus* because a jury could find that it is reasonable for pedestrians to look up from the ground when walking, particularly when failing to do so may expose the pedestrian to other hazards on a parking lot. Thus, the Court finds that Ms. Jenkins' failure to carefully watch every step on the way to her car does not preclude her negligence claim against the Defendant.

There is also a genuine dispute as to whether the Defendant had constructive knowledge of the potential hazards in its parking lot. The Defendant's representative, Mr. Piggott, testified that he received complaints from customers about the curb height directly in front of the store entrance. He noted that this curb is slightly taller than the rest of the curb areas. This evidence raises a genuine issue of material fact regarding whether the Defendant had constructive knowledge of the potential hazards elsewhere in its parking lot. Whether a business owner exercising reasonable care would have taken additional precautions to prevent falls in its parking lot, and thus breached its duty by failing to do so, is a matter for jury determination.

### 2. *Causation*

The Court finds that there is a genuine dispute of material fact regarding the cause of Ms. Jenkins' fall. While Ms. Jenkins initially told paramedics that she did not know what caused her fall, she later stated that her right foot felt unlevel as she walked back to her car. Ms. Jenkins explains the inconsistencies in her statements as a result of her emotional distress immediately after the fall, which hindered her ability to describe what happened at that time. In her responses to interrogatories, Ms. Jenkins indicated that she fell after stepping off the curb and onto uneven pavement while walking to her car. If the jury credits Ms. Jenkins' later statements, it could find in her favor on the issue of causation. Moreover, in analyzing the motion, the Court must view all of the factual evidence and any reasonable inferences to be drawn from it in the light most favorable to Ms. Jenkins.

Additionally, the Plaintiffs have presented expert evidence from Mr. Pedersen, who identified four hazards in the area where Ms. Jenkins parked and concluded that any of these hazards could have contributed to her fall. Although Mr. Pedersen could not identify exactly what

11

hazard, if any, caused Ms. Jenkins' fall, it is for the jury to assess the credibility of Ms. Jenkins' testimony and the weight, if any, to be given to Mr. Pedersen's opinion and determine whether causation has been proven.

The Court cannot assess the credibility of Ms. Jenkins' statements about the cause of her fall in reviewing the motion. The matter of a party's credibility lies within the province of the jury. Again, based on the evidence, reasonable inferences can be drawn in favor of Ms. Jenkins to suggest that the conditions in the Defendant's parking lot caused her fall. Therefore, the Court concludes that material facts concerning causation remain in dispute, making summary judgment inappropriate.

    3. *Loss of Consortium*

Loss of consortium is a derivative claim that allows for recovery for the "loss of society, companionship, comfort, guidance, and advice." *Roof Service of Bridgeport, Inc. v. Trent*, 854 S.E.2d 302, 322 (W. Va. 2020). "A claim for loss of consortium cannot be maintained independent of a cognizable personal injury claim." *S. Env't Inc. v. Bell*, 854 S.E.2d 285, 293 (W. Va. 2020) (citing *State ex rel. Small v. Clawges*, 745 S.E.2d 192 (W. Va. 2013)). The survival of a loss of consortium claim thus hinges on the survival of the primary cause of action. *Lucas v. ICG Beckley, LLC*, No. 2:15-cv-13534, 2018 WL 1040851 (S.D. W. Va. Feb. 23, 2018) (Johnston, J.) (quoting *Williams v. Smith & Nephew, Inc.*, 123 F. Supp. 3d 733, 749 (D. Md. 2015)).

As discussed above, the Court finds it legally inappropriate to grant summary judgment on Ms. Jenkins' negligence claim. The Plaintiffs have presented evidence that after Ms. Jenkins' fall, Mr. Jenkins provided care for Ms. Jenkins and assumed additional household responsibilities during her recovery. Additionally, due to Ms. Jenkins' limited mobility as a result of the fall, the

couple is unable to vacation as they once did. Since Ms. Jenkins' negligence claim remains viable and Mr. Jenkins has presented a prima facie claim for loss of consortium, the Defendant has failed to establish that it is entitled to summary judgment as to this claim.

## CONCLUSION

WHEREFORE, after thorough review and careful consideration, and for the reasons stated herein, the Court **ORDERS** that *West Virginia CVS Pharmacy, LLC's Motion for Summary Judgment* (Document 26) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: January 24, 2025

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA